UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**MARCUS POWERS, individually, and
on behalf of all others similarly-
situated,**

        Plaintiffs,

Case No.: 6:14-cv-1216-Orl-40 GJK

vs.

**BRAMBLES INDUSTRIES, INC., a
Foreign Profit Corporation, d/b/a
CHEP USA,**

        Defendant.

## COMPLAINT

The Plaintiff, Marcus Powers ("Mr. Powers"), individually and on behalf of all similarly-situated, hereby files this complaint against Defendant, Brambles Industries, Inc., ("Brambles") d/b/a CHEP USA ("CHEP") and states the following:

## INTRODUCTION

1. This is an action for failure to pay overtime wages pursuant to 29 U.S.C. § 216(b) and 29 U.S.C. § 207(a).

2. In 1937, President Franklin D. Roosevelt introduced to Congress a piece of New Deal Legislation related to minimum wage and hour standards in an effort to pull this country out of the Great Depression. In doing so, he charged Congress with the following:

> To protect the fundamental interests of free labor and a free people we propose that only goods which have been produced under conditions which meet the minimum standards of free labor shall be admitted to interstate commerce. Goods produced under conditions which do not meet rudimentary standards of decency should be contraband and ought not to be allowed to pollute the channels of interstate trade.

1

81 Cong. Rec. 4961 (1937).

3. The FLSA was signed into law on June 28, 1938, with support from both Democrat and Republican leaders. The motivations behind the FLSA ring just as true in today's economic turmoil as they did in the 1930's, as the FLSA's minimum wage and maximum hour provisions serve the dual purposes of lessening the costs of doing business and spreading work among the masses.

4. As explained by Justice Reed, "[i]n a period of widespread unemployment and small profits, the economy inherent in avoiding extra pay was expected to have an appreciable effect in the distribution of available work." *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942). In other words, the FLSA's overtime requirement was not intended to force employers to pay *more* per hour but rather to ensure that companies paid *less* by incentivizing them to employ more people.

5. Section 11(c) of the FLSA *requires* every covered employer to:

[M]ake, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder. 29 U.S.C. §211(c).

6. Title 29, Part 516, Subpart B contains the FLSA's implementing regulations with respect to recordkeeping requirements.

7. The Defendant in this case is a leading international provider of pallet and container pooling services for the Aerospace, Automotive, Chemical, Consumer Goods, Fresh Food and Manufacturing industries. Defendant has thousands of employees in dozens of countries worldwide.

8. The Defendant in this case failed to keep accurate records of the actual hours worked by their hourly-paid laborers in violation of Section 11(c).

9. The Defendant also violated Section 7(a) of the FLSA by requiring the laborers at its Orlando, Florida location to attend mandatory pre-shift meetings without pay, which resulted in the improper payment of overtime wages in work weeks where the Plaintiffs worked more than forty (40) hours.

10. By virtue of its actions Defendant is unfairly competing with companies who choose to follow the law and is contributing to the depression of wages and the lessening value of goods in this country.

11. This action is intended to cover all of Defendant's non-exempt, hourly paid laborers who worked at Defendant's Orlando, Florida location within the last three (3) years who were subject to Defendant's policy and practice of requiring attendance at pre-shift meetings without proper overtime compensation.

## STATEMENT OF FACTS

12. This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 as they arise under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

13. Venue is proper as the acts and omissions giving rise to Plaintiffs' claims occurred in Orange County, Florida.

### Defendants

14. Defendant Brambles Industries, Inc. ("Brambles") is a Foreign For Profit Corporation.

15. Brambles was originally founded in Australia in 1875 and was a butchery. *See* http://www.brambles.com/about-brambles/history.

16. In the 1920's Brambles expanded its operations as a "logistics" company. *Id.*

17. Today, Brambles is a supply-chain logistics company operating in more than 50 countries, primarily through the CHEP and IFCO brands. *Id.*

18. Brambles specialises in the pooling of unit-load equipment and associated services, focusing on the outsourced management of pallets, crates and containers. *Id.*

19. Brambles is publically traded on the Australian Securities Exchange (ASE). *See* Brambles 2013 Financial Report, *available online at* www.brambles.com.

20. In 2013, Brambles reported more than $5.8 billion (USD) in sales and more than $1 billion (USD) in profits. *Id.* at pg. 10.

21. CHEP was originally an Australian public entity (formally known as the Commonwealth Handling Equipment Pool). *See* http://www.chep.com/about_chep/history/.

22. CHEP was privatized in 1949 and was acquired by Brambles Industries in 1958. *Id.*

23. CHEP is now a fictitious brand name for business operations conducted wholly by Brambles.

24. CHEP and Brambles have equipment pooling operations in Europe, South Africa, Canada, the United States and Asia-Pacific. *Id.*

25. In 2002, CHEP opened a location in Orlando, Florida where the putative class members in this case work(ed).

26. CHEP is owned and operated exclusively by Brambles Industries, Inc.

27. Brambles and CHEP have a common business purpose – namely, providing supply chain pallet pooling to their corporate clientele.

28. The goods utilized by Defendant include but are not limited to pallets, reusable containers, and plastic crates.

29. At all times relevant, Defendant employed two or more persons engaged in interstate commerce as Defendant's employees, including the Plaintiffs, handled and worked on goods that were manufactured outside the State in which the ultimate service was performed (i.e. pallets, containers, plastic crates, and other logistics equipment).

30. Brambles Industries, Inc. is an employer as defined by the Fair Labor Standards Act, 29 U.S.C. § 203(d).

31. Brambles is a covered enterprise as defined by the FLSA, 29 U.S.C. § 203(r)(1).

32. In 2011, Brambles grossed more than $500,000 in gross sales or annual revenues.

33. In 2012, Brambles grossed more than $500,000 in gross sales or annual revenues.

34. In 2013, Brambles grossed more than $500,000 in gross sales or annual revenues.

35. In 2011, Defendant and its related entities collectively grossed more than $500,000 in sales or business done.

36. In 2012, Defendant and its related entities collectively grossed more than $500,000 in sales or business done.

37. In 2013, Defendant and its related entities collectively grossed more than $500,000 in sales or business done.

38. Defendant, through its related activities, is an "enterprise" as defined by 29 U.S.C. § 203(r)(1).

### Plaintiffs

39. Marcus Powers ("Powers") is a resident of the State of Florida.

40. Defendant hired Powers in May 2011 as a laborer at its Orlando, Florida location.

41. Powers worked for Defendant from approximately May 2011 until May 2013.

42. Powers was a non-exempt hourly paid employee.

43. Powers' primary job duties included the performance of manual labor related to Defendant's Orlando, Florida packaging operations (including but not limited to the lifting and organizing of materials stored at Defendant's Orlando, Florida facility).

44. Powers never traveled out of state as part of his job duties with Defendant.

45. Powers was never expected to travel out of state as part of his job duties with Defendant.

46. Powers and other similarly-situated employees were regularly required to come into work 15 to 30 minutes early to attend unpaid meetings.

47. If Powers and his coworkers did not attend their mandatory pre-shift meetings, Defendant threatened them with termination.

48. The unpaid meetings that form the basis of this Complaint were and are compensable time as defined by 29 C.F.R. §§ 785.11, 785.15, and 785.26.

49. Powers regularly worked more than forty (40) hours per workweek during his employment with Defendant, including time in attendance at mandatory meetings.

50. During one or more work weeks, Defendant failed to pay Powers for all of his hours worked.

51. During one or more work weeks, Defendant failed to pay Powers time and one half his regular rate(s) for all of his overtime hours worked.

52. Defendant did not comply with the provisions of 29 C.F.R. § 778.106.

53. Defendant did not keep accurate records of Powers' actual hours worked as required by Section 11(c) of the FLSA and its implementing regulations.

54. Defendant knew or had reason to know that Powers and others similarly situated were not paid the correct overtime wages because Defendant had in its possession records, including electronic records, of the work performed by the Plaintiffs for which they were not properly paid.

55. By virtue of its mandatory meeting policy, Defendant failed to pay Powers and all others similarly-situated proper wages for all of their overtime hours worked each week.

56. To the extent they exist, Defendant is in exclusive possession of the majority of the records reflecting the amounts paid and hours worked by Powers and all others similarly situated.

57. Defendant either knew its conduct violated the Fair Labor Standards Act or acted in reckless disregard for its provisions.

58. Defendant had a policy and practice of requiring its hourly-paid laborers who worked at Defendant's Orlando, Florida location, including Powers, to attend mandatory pre-shift meetings for which they were not paid.

59. Defendant had a policy and practice of failing to pay their hourly-paid laborers who worked at Defendant's Orlando, Florida location, including Powers, proper overtime compensation.

60. Defendant did not rely upon the advice of counsel in formulating the pay and recordkeeping practices applicable to the Plaintiff and others covered by this lawsuit.

61. Defendants did not rely upon any opinion of the U.S. Department of Labor in formulating the pay and recordkeeping practices applicable to the Plaintiff and others covered by this lawsuit.

62. Prior to the filing of this lawsuit, Powers sent a letter to Defendant requesting complete copies of his pay and time records; however, Defendant did not provide the requested records.

63. There exists other individuals who are similarly-situated to the named Plaintiff in that they: (1) performed manual labor related to Defendant's business operations in Orlando, Florida; (2) were hourly-paid, non-exempt, blue collar workers; (3) were required to attend mandatory pre-shift meetings for which they were not properly compensated; (4) worked more than forty (40) hours during one or more work weeks of their employment; (5) were not paid for all of their overtime hours worked each week during their employment; and (6) were subject to Defendant's policy and practice of violating Section 11(c) and Section 7(a) of the FLSA.

## COUNT I – UNPAID OVERTIME WAGES

64. Powers reincorporates and adopts the allegations in paragraphs 1-63 above.

65. Powers is an employee as defined by the FLSA.

66. Brambles d/b/a CHEP is an employer as defined by the FLSA.

67. At all times relevant, Brambles was Powers' employer as defined by the FLSA.

68. Brambles is a covered enterprise as defined by the FLSA.

69. Powers was individually covered by the FLSA.

70. The persons similarly-situated to Powers are individually covered by the FLSA.

71. Defendant employed Powers and other similarly-situated hourly-paid laborers at its Orlando, Florida location.

72. Powers and all similarly situated are entitled to be paid time and one half their regular hourly rate(s) for all hours worked over forty (40) each week during their employment with Defendant as required by 29 U.S.C. § 207(a).

73. Powers and all similarly situated are entitled to be paid overtime wages in accordance with 29 C.F.R. § 778.106.

74. Defendant failed to pay Powers and all similarly-situated employees for all of their overtime hours worked each week in violation of Section 7(a) of the FLSA.

75. Defendant had a uniform policy and practice of requiring its hourly-paid laborers to attend mandatory pre-shift meetings at their Orlando, Florida location without pay.

76. Defendant's mandatory pre-shift meeting policy was applied uniformly to all hourly-paid laborers at Defendant's Orlando facility.

77. In one or more work weeks of their employment, Defendant's mandatory unpaid meeting requirement violated Section 7(a) of the FLSA.

78. Plaintiffs suffered harm and continue to suffer harm in the form of unpaid wages.

79. Plaintiffs are entitled to be paid overtime wages for all of their hours worked over forty (40) each week.

80. Plaintiffs are entitled to an equal amount in liquidated damages.

81. Plaintiffs are entitled to recover their attorneys' fees and costs pursuant to 216(b) of the FLSA.

82. Defendant knew or had reason to know that Powers and other similarly-situated laborers were working overtime hours for which they were not properly compensated.

83. Defendants' violations were willful.

WHEREFORE, Plaintiff Marcus Powers, respectfully requests: (1) entry of an Order certifying a class of all similarly-situated laborers who worked at Defendant's Orlando, Florida facility, who were required to attend mandatory meetings and who did not receive the appropriate overtime wages during the three (3) years preceding the filing of this lawsuit; (2) entry of judgment against the Defendant; (3) entry of an order requiring payment of all overtime wages owed; (4) entry of an order requiring payment of an equal amount of liquidated damages as well as payment of Plaintiffs' attorneys' fees and costs; (5) entry of an order declaring that Defendant's pay and recordkeeping policies violate(d) Sections 7(a) and 11(c) of the FLSA and requiring Defendant to correct its violations for the benefit of all future employees; and such other and further relief as the Court deems just under the circumstances.

Respectfully submitted this 25th day of July, 2014,

Christina J. Thomas, Esq.
Florida Bar No.: 0074846
cthomas@forthepeople.com
Bernard R. Mazaheri, Esq.
Florida Bar No.: 64792
bmazaheri@forthepeople.com
Morgan & Morgan, P.A.
20 N. Orange Ave., 14th Floor
Orlando, Florida 32801
Tel: (407) 420-1414
Fax: (407) 245-3487
*Counsel for Plaintiffs*